(64' South. 394.)

No. 19,813.

## JOHNSON v. JACOB.

(Jan. 19, 1914. Rehearing Denied Feb. 16, 1914.)

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 240*) — INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a workman goes between two cars to uncouple them and has his choice of two methods, one safe and the other unsafe, and, with reason to believe that the cars may be moved at any minute, selects the unsafe method and is injured by the cars being moved, he cannot recover damages for his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 751–756; Dec. Dig. § 240.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Charles S. Wortham, Judge.

Action by William Johnson, for the use, etc., against Jules J. Jacob, Sr. From a judgment for defendant, plaintiff appeals. Affirmed.

Teissier & Teissier, of New Orleans, for appellant. Guion, Lambremont & Hebert, of Lutcher, for appellee.

BREAUX, C. J. This is an action in damages for alleged personal injury.

The amount sued for by plaintiff is $3,000 for the injury suffered, he alleged, by his son Henry Johnson, who was 18 years of age on the day of the accident.

Plaintiff alleged that his son Henry Johnson, who will be mentioned as Henry hereafter, lost the thumb and the index finger of his left hand, was badly injured through negligence of defendant and those for whose fault and negligence defendant is answerable.

Henry was the coupler and staker of cane cars of defendant.

The complaint is that Louis Washington, who was in the employ of defendant, negligently, without warning or notice, while Henry was uncoupling one of the cars; which was stationary at the moment, put a string of cars in motion, and was the cause thereby of moving the cars, which jolted the standing car which Henry was uncoupling, his left hand was caught in the coupling of the car, and thereby caused the injury.

The cars rest on wooden bodies; there is a crosspiece nailed to the body; below there is a plank giving shape to the front of the body, and it rests in front of each car; there is a buffer or round piece of timber dressed and reduced to a semicircular shape. An iron sheet encircles the front of the buffer, the upper front. There is, in consequence, more space below than on top. When the

buffers ahead of these cars strike one another, the iron rims only on the buffer collide one against the other. There is more space below the iron rim and lower edge of the buffer.

Just below the buffer a strip of iron is screwed down to the middle piece of timber which forms the length of the car body. There are three of these strips of wood. The iron bar connects with the buffer at the end. On each of these is an iron link held by the iron bar, and a hook. In coupling cars one hook is placed in the other, and the reverse is done when uncoupling the cars.

It was in uncoupling the cars that the cars jolted the stationary car and caused the casualty.

Henry suffered and was an inmate of the Charity Hospital for several weeks. He avers that he has a maimed hand and is unable to do all the work to which he was accustomed.

The defendant answered and pleaded the general issue and that plaintiff was guilty of contributory negligence.

During the trial in the district court, defendant offered to prove that Louis Washington was a fellow servant of plaintiff, employed in the handling of empty cars from a place where there was a number of cars near to the derrick. Plaintiff objected on the ground that defendant had not alleged that Washington was a fellow servant. The court overruled the objection and admitted the testimony. The plaintiff reserved a bill of exception, and the question is argued before this court.

The facts recited in the pleadings are in the main, as before stated: The plaintiff in the afternoon in September, 1911, while at work, was trying to unloosen the coupling which did not readily respond to his attempt.

It is reasonable to suppose that he held to the link coupling the cars, and that while holding them the car was pushed and collid-ed with the stationary car which plaintiff was endeavoring to uncouple.

There is a derrick used to transfer the cane from the carts to the cane car, to be hauled to the sugar house. It was near this derrick that plaintiff was at work, and near the derrick he had worked during the grinding season of 1910 and 1911. There was a foreman in charge of the hands working at the derrick. He had been employed for a number of years as derrick foreman. At the moment of the accident this foreman had stepped aside and was not present at the derrick.

This foreman instructed plaintiff at the time that he was put to work at the derrick, showed how to work, admonished him to be careful, and to be careful when cars were pulled up. Cars were pulled up by a mule, to the place at which they were pulled to be coupled or uncoupled.

There were three empty cars by the derrick. There had been loaded cars at that place but they had been hauled away.

He had helped Louis Washington, who was generally in charge in the absence of the foreman, and when the foreman was present he worked at the derrick.

They both worked under the foreman. Louis Washington attended to pulling the cars, and plaintiff coupled and uncoupled them. The cars that plaintiff was uncoupling were about 100 feet away from those that Washington went back to get.

At the time of the accident, when Washington was coupling cars, plaintiff was uncoupling the three first. He was between the second and third car.

The plaintiff, testifying, said that he had no notice of approaching cars; he none the less went between the two cars. His hands were underneath the couples. He started uncoupling from the rear of the line of cars and came on to the front.

He saw Washington walking back to the

cars that were coupled and to drive his mules; they were hitched to these cars. He saw the line of these cars as they started under the direction of Louis Washington. He drove to the car that plaintiff was uncoupling and bumped against it.

The coupling chains and hooks were taut. Plaintiff was shaking them in order to get them apart.

Plaintiff says as a witness that a car bumping against another would have the effect of loosening the coupling and thereby rendering it easier to uncouple the car.

In this instance it happened that plaintiff did not avail himself of the opportunity of taking out the hook; his hand was above at least a foot. It could not have been caught otherwise as the bumpers were at least half a foot above the couplers.

Plaintiff did not seem to have a well-defined idea how the accident happened. The statement of plaintiff to his attorney as alleged was that his thumb and index finger were cut in the coupling of the cars.

As a witness he said that they were caught in the bumper.

If his hands were on the coupling, they were where it was proper for them to be. If they were on the iron of the bumper near the top of either bumper, they were not at the proper place. The evidence does not warrant the conclusion that they were anywhere else.

One of the explanations given by the plaintiff is that it was necessary to raise his hands half a foot to loosen the couplings. The skeleton model in evidence does not suggest the necessity of raising one's hand to that height.

Louis Washington testified that he did not know that plaintiff was between the cars.

134 LA.—17

He said:

"The cars were in a long string and I pulled up six cars and when they stopped I went back and got six more, but I did not know he was in between the first string of cars.
"Q. Henry Johnson heard you give instructions to start the cars?
"A. Yes, sir."

These were the alleged offending cars of which the witness had charge.

Plaintiff, through learned counsel, seeks to make a point in regard to the instructions of the foreman not to go between the cars when running.

The following is an excerpt from the testimony of Johnson:

"Q. You said that the instructions were not to couple or uncouple cars when they were moving?
"A. Yes, sir.
"Q. The cars that Johnson was uncoupling were not moving?
"A. No, sir; but I was pulling up the second lot of cars, and I did not know he was in between the first cars."

Under the instructions, it was proper to uncouple the cars after they had been stopped, but they were to be uncoupled from underneath the couplings and not from above, and the workman under general instructions should be alert when other cars are brought up to be coupled, as they may jostle the standing car, a possibility against which it was part of his work to guard.

Workmen who are warned against possible dangers ought to be careful. The evidence warrants the conclusion that plaintiff is without right to damages, and that by this conclusion there is no necessity of discussing at length the fellow-servant doctrine.

The work of hauling cane done as usual, the testimony was admissible without that plea, and from it we glean that it is not possible to allow damages.

For reasons stated, the judgment is affirmed at appellant's costs.